TUCKER, Vice Consul of Russia, v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. November 22, 1907.)

No. 5.

TREATIES—PROCEEDINGS FOR SURRENDER OF DESERTER FROM RUSSIAN SHIP—RIGHT TO PROCEEDS OF FORFEITED RECOGNIZANCE.

On demand of a Russian vice consul process was issued by a United States commissioner, upon which a deserter from a Russian naval vessel was arrested and detained in prison for surrender to the vice consul or master of the vessel, in accordance with the requirement of article 9 of the treaty of December 6, 1832 (8 Stat. 448), between Russia and the United States, which provides that such assistance shall be rendered by either country to the other in such cases on proper demand and at the cost of the party making the demand. The person so held was discharged on a writ of habeas corpus by the District Court, on the ground that he was not a deserter within the meaning of the treaty, but, on an appeal being taken, such court required him to enter into a recognizance with a surety to appear and abide the judgment of the higher court. The judgment of the District Court was finally reversed by the Supreme Court, and, the defendant failing to appear, suit was brought by the United States on the recognizance and the amount of the penalty therein was paid into court by the surety. *Held*, that the recognizance was not taken for the benefit of the vice consul or the Russian government, and that the court had no power under the treaty or any rule of comity to award the amount recovered thereon to him in reimbursement for costs expended in the proceedings.

In Error to District Court of the United States for the Eastern District of Pennsylvania.

John F. Lewis, for plaintiff in error.

Walter C. Douglas and J. W. Thompson, for the United States.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

GRAY, Circuit Judge. The material facts disclosed by the record in this case are as follows: In June, 1900, one Leo Alexandroff, a Russian subject, was brought to Philadelphia with a number of others, to constitute the crew of the Russian cruiser Variag. While this crew, under the charge of a Russian officer, were awaiting, in Philadelphia, the completion of the cruiser, then in course of construction at a shipyard in that city, Alexandroff deserted. He was afterwards arrested, under process issued by a United States commissioner, and committed to the Philadelphia county prison. The commitment recited that he was charged with desertion from the imperial Russian cruiser Variag, and had been arrested at the instance of the vice consul of Russia, at Philadelphia, and upon the complaint of the captain of the said cruiser, "in

accordance with the terms of the treaty between the United States and Russia and the act of Congress in such case made and provided," to be kept by the keeper of said prison, "subject to the order of the Russian vice consul at Philadelphia, or of the master of the cruiser Variag, or until he should be discharged by due course of law."

Article 9 of the treaty of 1832 (8 Stat. 448) between the United States and Russia provides, as follows:

"The said consuls, vice consuls and commercial agents are authorized to require the assistance of the local authorities for the search, arrest, detention and imprisonment of the deserters from the ships of war and merchant vessels of their country. For this purpose they shall apply to the competent tribunals, judges and officers, and shall in writing demand said deserters, proving, by the exhibition of the registers of the vessels, the rolls of the crews, or by any other official documents, that such individual formed part of the crews; and this reclamation being thus substantiated, the surrender shall not be refused. Such deserters when arrested, shall be placed at the disposal of said consuls, vice-consuls or commercial agents, and may be confined in the public prisons, at the request and cost of those who shall claim them," until they can be restored to the vessels to which they belong, etc.

Alexandroff sued out a writ of habeas corpus, against the keeper of the prison and the master of the Variag, and, after a hearing before the United States judge for the Eastern District of Pennsylvania, was discharged, on the ground that he was not a deserter, within the terms of the treaty, from a Russian ship, as the Variag had not yet been delivered to the Russian government and was still uncompleted in the hands of its builders. An appeal from this decree was at once taken at the instance of the representative of the Russian government, and, pending that appeal, Alexandroff was released from custody, upon his entering into a bond to the United States of America, with a surety company as surety, for the sum of $200, upon condition:

"That if the said Leo Alexandroff, relator in certain proceedings on petition for writ of habeas corpus, against Robert C. Motherwell, Jr., keeper of the Philadelphia county prison, and Captain Vladimir Behr, master of the Russian cruiser Variag, lately pending in the District Court of the United States for the Eastern District of Pennsylvania, shall be and appear at the District Court of the United States for the Eastern District of Pennsylvania, upon the determination of an appeal taken by the said respondents, to the United States Circuit Court of Appeals for the Third Circuit, from the decree of the District Court in said proceedings, discharging the relator, and the receipt and filing of a mandate or other process or certificate showing the disposition thereof by the said Court of Appeals, or within five days thereafter to answer and obey whatever final order or judgment shall be made in the premises, and not depart said court without leave thereof, then this recognizance to be void, otherwise to remain in full force and virtue."

This court affirmed the decree of the District Court. 48 C. C. A. 97, 107 Fed. 437. The record was then removed, by writ of certiorari, to the Supreme Court, where the judgment of both courts below were reversed and the case remanded to the District Court for further proceedings. Thereafter the relator, having been duly summoned to appear in the said District Court, made default, and the bond entered into by him and his surety, or bail, was duly forfeited, and suit was brought in behalf of the United States, in said court, against the said surety company, to recover the penalty of the bond. On the next day, the plaintiff in error, as vice consul of the Russian Empire, by his attor-

ney, made formal demand upon the said surety company for the said sum of $200, the amount of said bond, alleging that said amount was due to the said claimant for costs in the Alexandroff proceedings. Thereupon, the said surety company asked leave of the court to pay the said sum of $200 into the registry of the court, to be disposed of as to the court should seem proper. Leave having been granted as prayed for in said petition, the said sum of $200 was duly paid into the registry of the court below.

Thereupon, the plaintiff in error, vice consul as aforesaid, presented his petition to the said court, reciting the facts in connection with the habeas corpus proceedings, together with the mandate of the Supreme Court above referred to, and setting forth the respondent's bill of costs incurred in said proceedings, theretofore filed in said court by the said petitioner, amounting to $288.75, including $169.55 the amount of costs in the Supreme Court, for which judgment was given by said court in favor of the said William R. Tucker and against the said Alexandroff. Upon consideration of said petition, the court below dismissed the same, and, upon motion of the United States district attorney, ordered and decreed that the amount of said recognizance, to wit, $200, deposited in the registry of the court, should be paid, less certain fees and commissions, to the United States of America, the obligee in the bond.

The plaintiff in error bases his contention, that the money paid into court by the surety upon the so-called bail bond, should be paid to him as the representative of the Russian government, upon alleged equities arising out of the ninth article of the treaty between the United States and Russia, above referred to. He argues that the bond in question was not given in the course of a criminal case, that the proceedings on the writ of habeas corpus were civil in their nature, that the relator in those proceedings had broken no law of the United States, was not an American citizen but a Russian subject enlisted in the naval service of his own country, and that the government of the United States was in nowise a party to the proceedings, nor interested in the subject-matter of the controversy. It is therefore contended that, in conformity with the spirit of the treaty, and to promote the amity and good will intended to be established thereby, the court below should have ordered the fund in its possession to be paid to the plaintiff in error, in order that the Russian government might, pro tanto, be reimbursed for the costs incurred by reason of the proceedings incident to the suing out of the habeas corpus by the relator. No case is referred to by the learned counsel for the plaintiff in error as exactly in point, nor does there seem to be any precedent which in principle would support this contention. Undoubtedly, where there is a question as to the rights and duties of the parties to such a treaty as the one here referred to, those rights and duties must, in the language of the Supreme Court in the Alexandroff Case, be determined by the treaty, and this particular convention set out in article 9 of our treaty with Russia, is intended for the mutual protection of both powers, and "should be interpreted in a spirit of uberrima fides and in a manner to carry out its manifest purpose."

Referring, then, to article 9 of the treaty, as quoted above, let us see what the uttermost good 'faith required of the United States, for a full performance of its duty to Russia, and for carrying out the manifest intent and purpose of the treaty. The manifest and dominant intent of the signatory parties, was to remedy the hardship and inconvenience resulting to the commerce of both countries, as well as to their respective ships of war, from the want of authority for the arrest and compulsory return of deserters from the merchant ships or public ships of either country, while in the ports or waters of the other. As to public ships, an exception was therefore made by the treaty to the general rule, that refugees from the military service of one country cannot be reclaimed within the jurisdiction of another, by agreeing in the article of the treaty referred to that the consuls, vice consuls and commercial agents of either country should be authorized to require the assistance of the local authorities of the other, for the search, arrest, detention and imprisonment of the deserters from its ships of war, while in the ports or waters of such other country. For this purpose, they may apply to the local tribunals, judges and officers. The form in which the demand shall be made, and the method of proving the facts requisite to establish desertion, are prescribed in the treaty. The duty hereby imposed upon the judicial tribunals and magistracies of the country, whether state or national, would seem, from a cursory examination of the record in this case and from the opinions of this court and the Supreme Court in the Alexandroff Case, to have been fully performed. The assistance required by the treaty was certainly given in full measure by the United States commissioner who issued the warrant for the arrest of Alexandroff and his commitment to the Philadelphia county prison, subject to the order of the Russian vice consul and of the master of the Russian cruiser. This action of the local authorities was taken promptly in the face of a situation which, in view of the divided judicial opinion afterwards developed, might well have caused hesitation or refusal. Under the terms of the treaty, nothing else was required of the United States, except that due delivery of the alleged deserter should be made to the Russian authorities at the proper time and place. The subsequent judicial inquiry by the District Court, under the habeas corpus proceedings, as to the legal propriety of Alexandroff's arrest and detention, was in nowise in contravention of the obligations of the treaty or of the rights of the demanding party under it. The judicial determination, that the relator was not a deserter from a Russian ship of war, within the terms and meaning of the treaty, was in recognition of, and not violative of, its obligations. It is not certain that the duty of this government in the premises did not end with the discharge of the relator, which the opinion of the District Court made necessary. Whether it did, or not, the judge who ordered the discharge did all that the relations established between this country and Russia, by the treaty, could possibly have demanded, by requiring, in view of the appeal prayed for, that Alexandroff, as a condition of his release, should give a bail bond to appear in the said district court within five days after the determination of said appeal, to abide the further order of the court. The require-

ment of this bond exhibited an anxious care to guard to the uttermost the rights and interest of the demanding party.

Under the opinion of the court, Alexandroff was entitled to his release, and the precautionary measure of requiring the bond was only taken to secure, so far as it could secure, the appearance of Alexandroff, in the event of a reversal of the court's decision by the appellate tribunal. This was the sole purpose of the bond, as expressed in its condition. Neither the purpose of the bond nor its terms could be referred in any way to a reimbursement of the costs incurred by the respondent in the habeas corpus proceedings, or by the representative of the Russian government. It was the ordinary method of compelling an appearance at a future time of one who is about to be discharged from legal custody, for which the friendly custody of the bail or surety is substituted. The government did all that it could in this case to coerce the appearance of Alexandroff, by exacting the penalty from the surety, in case the principal did not render himself up, according to the terms of the bond. The surety in this case was under no contractual or equitable obligation to respond to the plaintiff in error, for the costs incurred by him in his controversy with the relator. The $200 was exacted by the government, the payee in the bond, as the penalty of the default made by Alexandroff in not appearing in accordance with its condition. Such a bond has no analogy in form or function to a bond to secure the payment of costs, or of the amount of a judgment, or to an indemnity bond. The court below had no authority to divert the sum deposited with it by the surety, to any other purpose than that for which it was exacted. To do so, would be to ignore the terms of the bond itself and the interest of the United States, as its payee, in exacting the penalty for its broken condition. The plaintiff in error had no interest, legal or equitable, in the bond, that would have supported a suit for his use against the surety. The undertaking of the surety had no reference to the payment of costs. The treaty expressly provided that the judicial and ministerial assistance to be given by either party to the convention, was to be at the cost of the party demanding it. If, therefore, upon any grounds of national comity or altruism, it be thought that the amount of the penalty thus exacted from the surety by the United States, should be paid to the representative of the Russian government, it can only be accomplished by legislative, and not by judicial, authority.

We are of opinion that the court below properly refused to grant the petition of the plaintiff in error, and its judgment is therefore affirmed.